IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Karen RODRIGUEZ, Antonio RODRIGUEZ, Boris SHAYKEVICH and Yelena SHAYKEVICH, individually and on behalf of other similarly situated persons,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>    Defendant. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**Jury Demand**</u> |

FILED UNDER SEAL

**WITES & KAPETAN, P.A.**
Marc Wites
Fla. Bar No. 24783
4400 North Federal Highway
Lighthouse Point, FL 33064
*mwites@wklawyers.com*
Tel: 954.526.2729
Fax: 954.354.0205

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox
David A. Straite
850 Third Avenue
New York, NY 10022
*dstraite@kaplanfox.com*
Tel.: 212.687.1980
Fax: 212.687.7714

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King
Mario M. Choi
350 Sansome Street, Suite 400
San Francisco, CA 94104
*lking@kaplanfox.com*
Tel: 415.772.4700
Fax: 415.772.4707

I.      **INTRODUCTION**

1.      This class action arises from the willful failure of Florida's largest private residential homeowners insurer to secure sensitive customer information of its policy holders. Despite being obligated by contract and law to safeguard this information, Defendant's website currently grants public access to important insurance documents without encryption, and without password authentication.  This serious breach of legal duties, basic industry customs and representations to customers is currently ongoing, and has caused significant harm.  If an ordinary member of the public – or worse, a burglar or identify thief – were to learn of the breach (assuming one has not already), customers would be subject to even greater harm, necessitating that this complaint be filed under seal.

2.      This action seeks equitable relief and money damages on behalf of Plaintiffs Karen RODRIGUEZ, Antonio RODRIGUEZ, and Boris and Yelena SHAYKEVICH and other similarly situated consumers who currently have an insurance policy through Universal Property & Casualty Insurance Company (the "Defendant" or "Universal Insurance") (the "Policy Holders").  Plaintiffs also assert these claims on behalf of former Policy Holders affected by Defendant's conduct alleged herein (the "Affected Former Policy Holders") (together with the Policy Holders, the "Class Members").

3.      Defendant Universal Insurance claims to be the largest private personal residential homeowners insurance company in Florida based on number of policies written.  According to Defendant, more than 500,000 homeowners throughout the United States insure their Florida homes with a policy written by the Defendant, and tens of thousands of homes in other states (primarily Georgia and the Carolinas) are also insured by Universal Insurance.

4. Class Members are able to access their accounts through a website controlled and made available by Defendant: https://www.universalproperty.com (the "Website"). Important documents, such as declaration pages and evidence of insurance coverage (the "Insurance Documents"), are also available for viewing and downloading from the Website. The Insurance Documents contain sensitive customer information aggregated in one place, including customer name, mailing address, email address, telephone number, and limits of insurance. If the insured property has an address distinct from the mailing address, the Insurance Documents might suggest the home is a vacation home and thus occasionally or frequently unoccupied. One Insurance Document discloses whether the home has a burglar alarm.

5. Although the Defendant requires a password to access the main portal for the account and even uses https (an ostensibly secure internet communication protocol), the Defendant provides ▮▮▮▮▮▮ to unencrypted copies of the Insurance Documents. They are available today to the public ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮. It is therefore a double-hit: no password required, and no encryption, constituting a willful failure to protect sensitive information. Upon information and belief, it is possible that each and every Policy Holder is affected (and also possible that former Policy Holders could be affected). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

6. Federal and state laws and regulations require financial institutions like the Defendant to protect the security and confidentiality of non-public personal information of the type contained in the Insurance Documents.

2

7.   Defendant represents in its privacy policy that it maintains "physical, electronic, and procedural safeguards to ensure the confidentiality of the personal information we obtain about you."

8.   Defendant admits in its Annual Report filed with the SEC that financial institutions like Defendant must accurately "notify customers and other individuals about their policies and practices relating to their collection and disclosure of customer information and their practices relating to protecting the security and confidentiality of that information."

9.   Because this serious data breach is currently ongoing, Plaintiffs are filing this complaint temporarily under seal and simultaneously demanding that Defendant immediately secure the sensitive information of Plaintiffs and the Class. Once Defendant has confirmed that the breach has been remedied, Plaintiffs can move to unseal this class action complaint.

10.   Plaintiffs bring claims for equitable relief and money damages based on the following causes of action:

   a.   Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*;

   b.   Breach of Implied Covenant of Good Faith and Fair Dealing; and

   c.   Unjust Enrichment/Restitution.

## II.   JURISDICTION AND VENUE

11.   This Court has subject matter jurisdiction over all claims pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the amount in controversy exceeds $5,000,000, and at least one member of the class is a citizen of a state other than Florida.

12.   This Court also has federal question jurisdiction over the FCRA claim pursuant to 28 U.S.C. § 1331.

3

13.     This Court also has supplemental jurisdiction over the Florida state law claims under 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over the Defendant because Defendant is headquartered in Florida and the violations occurred in Florida.

15.     Venue is appropriate in this District pursuant to 28 USC § 1391(b)(1) because Defendant is headquartered in Ft. Lauderdale.

III.    PARTIES

16.     Plaintiff Karen Rodriguez is an adult domiciled in and a citizen of the State of Florida, Miami-Dade County, who currently insures a home in Miami-Dade County with a policy written by Defendant. The exposed Insurance Documents relating to Plaintiff's policy disclose that the policy insures the dwelling, personal property, loss of use, personal liability and medical payments. The exposed Insurance Documents also identify the Plaintiffs' mailing address, an annual policy premium of $███████ for the current policy year, and whether the insured property has a burglar alarm. Plaintiff Karen Rodriguez pays monthly premiums to her escrow agent who in turn pays yearly or quarterly payments to Defendant on Ms. Rodriguez's behalf. She would not have entered into the insurance contract had she known that the sensitive customer information would be made publicly available.

17.     Plaintiff Antonio Rodriguez is an adult domiciled in and a citizen of the State of Florida, Broward County, who currently insures a home in Broward County with a policy written by Defendant. The exposed Insurance Documents relating to Plaintiff's policy disclose that the policy insures the dwelling, personal property, loss of use, personal liability and medical payments. The exposed Insurance Documents also identify the Plaintiffs' mailing address and telephone number and whether the insured property has a burglar alarm, and disclose an annual

4

premium of $[redacted] for the current policy year. Plaintiff pays monthly premiums to his escrow agent, in connection with his monthly mortgage payment, who in turn pays yearly or quarterly payments to Defendant on Mr. Rodriguez's behalf. He would not have entered into the insurance contract had he known that the sensitive customer information would be made publicly available.

18.     Plaintiffs Boris and Yelena Shaykevich are adults domiciled in and are citizens of the State of Connecticut, New Haven County, who currently insure a home in the State of Florida, Pinellas County, with a policy written by Defendant. The exposed Insurance Documents relating to Plaintiff's policy disclose that the policy insures the dwelling, personal property, loss of use, personal liability and medical payments. The exposed Insurance Documents also identify the Plaintiffs' mailing address in Connecticut, the insured property address in Florida, telephone number in Connecticut, an annual premium of $[redacted], and whether the insured property has a burglar alarm. Plaintiffs pay bi-annual premiums to Defendant and would not have entered into the insurance contract had they known that the sensitive customer information would be made publicly available.

19.     Defendant Universal Insurance is a Florida corporation based at 1110 W. Commercial Blvd., Suite 300, Ft. Lauderdale, FL. Defendant is an indirect wholly-owned subsidiary of Universal Insurance Holdings, Inc. ("Universal Insurance Parent"), a Delaware company based at the same address in Ft. Lauderdale. Defendant is the largest subsidiary of Universal Insurance Parent.

**IV.     FACTUAL ALLEGATIONS**

20.     Defendant is vertically integrated, performing substantially all aspects of insurance underwriting, policy issuance, general administration and claims processing and

settlement internally. Defendant primarily writes personal residential homeowners insurance policies, predominantly in Florida, and reports that it received $817.7 million in direct written premium for the year ended December 31, 2015. Defendant also writes homeowners insurance policies in Delaware, Georgia, Hawaii, Indiana, Maryland, Massachusetts, Minnesota, North Carolina, Pennsylvania and South Carolina.

21.     Policy Holders must pay their annual premiums up-front in a lump sum or in bi-annual or quarterly installments. If the Policy Holder prefers monthly payments, the premium can be financed by Atlas Premium Insurance Company, another subsidiary of Universal Insurance Parent. A minimum $800 total policy premium amount is required for Atlas to finance the contract, and Atlas does not run a credit check. Instead, it relies solely on the customer's credit information obtained by Defendant and provided to Atlas.

22.     When the owner of a Universal Insurance policy wishes to access his main account page through the Website, he is required to enter a username and password. If both are entered correctly, he is then directed to another webpage where he may select various policy documents or other information. When accessed this way, the Insurance Documents are password protected.

23.     However, there is a second way to access the same Insurance Documents without using a password. Defendant has created a second URL that requires no password or username. This URL is standardized for all policy holders. For example, if a Plaintiff wishes to view his declaration page, he or she could – without first accessing the Website in a secured fashion using a username and password – place the following URL in his internet browser:

   *https://universalproperty.com* ███████████████

This would result in the display of the declaration page which, again, would appear without the user first logging into the Website in a secured fashion.

24.     The ███ -digit portion of the URL highlighted above is an exemplar of the simple protocol created and used by Defendant, where the ███ digits assigned to the document number correspond to the declaration page. For this example, the undersigned changed the assigned number to ███ to protect the identity of any current Class Member. Using the real ███ -digit number, however, the URL above will direct anyone to the declaration page *without requiring authentication*. Neither the password nor username are required.

25.     The unprotected URL above also works even if the policy holder does not access his account at all. He and any person with a computer might also then have access to the Insurance Documents of *all other policy owners* by simply changing one or more of the digits in the seven-digit number highlighted above. Furthermore, the second, unprotected URL is used by Defendant when a customer accesses the Insured Documents from the "Lender Verification" section of his account page, for example. The URL is thus displayed on the customer's (or hacker's) browser.

26.     To further illustrate the point, a redacted screen shot showing the Insurance Document and the URL is attached to this complaint as Exhibit B, with sensitive customer information redacted. The undersigned accessed an Insurance Document (with permission of a Plaintiff) without using a user name or password. The URL was simply typed into a browser and counsel was able to access, download and print the Insurance Document.

27.     The security lapse at issue affects a number of Insurance Documents, not just the declaration pages. So, for example, a certificate of evidence of insurance for the same policy has a different ███ -digit identifier, but the URL to access the document uses the exact same simple

7

protocol. Below, the actual identifier was changed to ▮▮▮▮▮ to protect the identity of Class Members:

*https://universalproperty.com*▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28.     As highlighted above, the only two portions of the URL that change when accessing different documents are the unique document number, and ▮▮▮▮▮▮▮ changes to ▮▮▮▮▮▮▮   As with the declaration page, the URL above can be used by anyone to access the document without using a password or username.

29.     Worse still, the ▮▮▮-digit codes ▮▮▮▮▮▮▮▮▮▮ are ▮▮▮▮▮▮ to actual policy numbers ▮▮▮▮▮▮▮. Thus, if the policy number were ▮▮▮▮▮▮ ▮▮, and the URL above uses the ▮▮▮-digit document identifier ▮▮▮, the declaration page for policy number ▮▮▮▮▮▮▮▮▮▮▮▮ has a numerical designation that also increases by ▮▮▮▮▮▮▮▮▮▮ and the URL also only changes ▮▮ ▮▮▮▮▮ allowing unprotected access to the next policy ▮▮▮▮▮▮▮▮

*https://universalproperty.com*▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

30.     The failure of Defendant to password-protect or encrypt the Insurance Documents is deeply troubling. The documents contain phone numbers and email addresses matched to the real identities of policy holders; their policy limits and deductibles; and other sensitive customer information. If the policy owner has substantially valuable personal property at the insured home it would be reflected in the increased coverage and associated premiums identified under "Coverage C – Personal Property," allowing would-be thieves to target a home based on this information alone. Likewise, increased personal liability limits identified under "Coverage E" could influence personal injury claims against an insured, simply based on insurance coverage. If the home is a vacation home and periodically unoccupied, a hacker could learn this fact simply

by observing an out-of-state address for the insured and an in-state address for the property location.

31.     One Insurance Document even publicly discloses whether the home has a burglar alarm (in the ███████████████████████ of the declaration page). ████████████████

████████████████████████████████████████████  ████████  ████████

████████████████████████████████████████████████████  ████████

████████████████████████████

32.     In sum, given the ████████ protocol used by Defendant on the Website, and given the lack of password protection and encryption, it would be a simple matter for even an amateur hacker to write an algorithm and scrape each and every unprotected document from the Website. If Defendant's entire customer base is equally affected, then 600,000 people across the United States, more than 500,000 of whom insure property in Florida, are exposed.

33.     In Defendant's privacy policy revised September 2015 (available on the Website, and attached to this Complaint as Exhibit A), Defendant falsely represents:

> *We maintain physical, electronic, and procedural safeguards to ensure the confidentiality of the personal information we obtain about you. We restrict access to your personal information to those employees who need to know that information to provide services to you.*

34.     Likewise, in Defendant's most recent Form 10-K filed with SEC on February 24, 2016, the Defendant admits the following on page 21 in the "Privacy Regulation" section:

> *Federal and state laws and regulations require financial institutions to protect the security and confidentiality of non-public personal information and to notify customers and other individuals about their policies and practices relating to their collection and disclosure of customer information and their practices relating to protecting the security and confidentiality of that information.*

35.     The exact representation above appeared in Defendant's Form 10-K the prior year dated February 25, 2015, on p. 10.

36.     Defendant has failed to honor these representations and obligations, as Plaintiffs' sensitive customer information is not protected by even the simplest of physical, electronic, and procedural safeguards, and Defendant has failed to protect the security and confidentiality of the information.

## V.     CLASS ACTION ALLEGATIONS

37.     Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of Universal Insurance consumers who currently have an insurance policy through Universal Property & Casualty Insurance Company (the "Defendant" or "Universal Insurance") (the "Policy Holders").  Plaintiffs also assert these claims on behalf of former Policy Holders affected by Defendant's conduct alleged herein (the "Affected Former Policy Holders") (together with the Policy Holders, the "Class Members").

38.     Excluded from the Class are Defendant its past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns and any entity in which any of them have a controlling interest, its indirect ultimate parent Universal Insurance Parent, and any of its or its subsidiary's past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns and any entity in which any of them have a controlling interest. The Class also excludes all judicial officers assigned to this case as defined in 28 USC § 455(b) and their immediate families.

39.     Numerosity:  the size of the class is unknown, but upon information and belief will exceed half a million members if the data breach affects all customers.  They are so numerous and dispersed nationwide that joinder of all members is impractical.

40.   Commonality:  common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. These common questions include the following, among many others:

a.   Whether Defendant failed to encrypt the Insurance Documents;

b.   Whether Defendant allowed public access to the Insurance Documents without a password;

c.   Whether Defendant is aware of any attempts by unauthorized parties to access the Insurance Documents;

d.   The start and end dates of Defendant's acts;

e.   To what extent Defendant's conduct extends to customer information;

f.   Whether Defendant's actions violated Florida law;

g.   Whether Defendant's actions occurred within the State of Florida;

h.   The extent to which Defendant controlled, designed and operated the Website;

i.   The extent to which Defendant was aware the Insurance Documents are available publicly without authentication; and

j.   Whether the Defendant's Privacy Policy creates an implied contract with Class Members under Florida law.

41.   Typicality:  Plaintiffs' claims are typical of the claims of all other Class Members. Plaintiffs all have currently active insurance policies written by Defendants; all have paid money premiums to Defendant; and all have their sensitive customer information exposed to the public without password protection or encryption.  Their claims are based on the same legal theories as the claims of other Class Members.

11

42.     Adequacy: Plaintiffs will fairly and adequately protect the interests of all members of the Class in the prosecution of this action. Plaintiffs are similarly situated with, and have similar injuries to, the members of the Class they seek to represent. All Plaintiffs are adults and have retained counsel experienced in complex class action matters generally and in the emerging field of digital privacy litigation specifically.

43.     Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this case, because joinder of all members is impractical if not impossible. Furthermore, the cost of litigating each claim individually might exceed actual and/or statutory damages available to each class member thus making it impossible for each class member to litigate his or her claims individually. There will be no difficulty in managing this action as a class action.

VI.    **COUNTS**

**COUNT I**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

44.     Plaintiffs incorporate the above allegations by reference as if set forth fully herein.

45.     Plaintiffs entered into insurance contracts with Defendant to obtain homeowners insurance policies from Defendants (the "Insurance Contracts"). All policies are currently in force, and Plaintiffs have performed all obligations under the contracts, including the payment of premiums to Defendant.

46.     The Insurance Contracts constitute valid and enforceable contracts between Plaintiffs and the Defendant.

47.     Florida recognizes the implied covenant of good faith and fair dealing in every contract.

12

48.     Defendant represents in its Privacy Policy that it maintains "physical, electronic, and procedural safeguards to ensure the confidentiality of the personal information we obtain about you.  We restrict access to your personal information to those employees who need to know that information to provide services to you."

49.     Defendant represented in its most recent Form 10-K filed with SEC, on page 21 in the "Privacy Regulation" section, that "Federal and state laws and regulations require financial institutions to protect the security and confidentiality of non-public personal information and to notify customers and other individuals about their policies and practices relating to their collection and disclosure of customer information and their practices relating to protecting the security and confidentiality of that information."

50.     Implicit in the Insurance Contracts are implied contractual obligations to honor the Privacy Policy and representations in SEC filings quoted above related to data protection.

51.     Defendant's violation of the Privacy Policy and misrepresentation of its data protection practices by failing to encrypt the Insurance Documents and by allowing public access to the Insurance Documents without authentication constitutes a breach of the implied covenant to good faith and fair dealing.

52.     Plaintiffs would never have entered into the Insurance Contracts had Defendant accurately described its data protection (or lack thereof) related to the Insurance Documents.

53.     Plaintiffs have suffered actual damages in the diminished value of the services they were contractually entitled to receive under the contract and the implied term, or in the alternative suffered actual damages in the amount of premiums paid to Defendant.

13

## COUNT II
### Unjust Enrichment/Restitution

54.     Plaintiffs incorporate the above allegations by reference as if set forth fully herein.

55.     Plaintiffs conferred a financial benefit on the Defendant in the form of monthly or periodic premiums paid pursuant to the policies.

56.     Defendant accepted the monetary benefit and has knowledge of the monetary benefit conferred by all Plaintiffs.

57.     Defendant uses the premiums in part to pay for the administrative costs of data management and security of sensitive customer information.

58.     Defendant represents in its Privacy Policy that it maintains "physical, electronic, and procedural safeguards to ensure the confidentiality of the personal information we obtain about you. We restrict access to your personal information to those employees who need to know that information to provide services to you."

59.     Defendant violated the Privacy Policy by failing to encrypt the Insurance Documents and by allowing public access to the Insurance Documents without authentication.

60.     Defendant represented in its most recent Form 10-K filed with SEC, on page 21 in the "Privacy Regulation" section, that "Federal and state laws and regulations require financial institutions to protect the security and confidentiality of non-public personal information and to notify customers and other individuals about their policies and practices relating to their collection and disclosure of customer information and their practices relating to protecting the security and confidentiality of that information."

61.     Defendant's data protection practices with respect to the Insurance Documents are inconsistent with Defendant's representations to the SEC and to investors.

62. Under these circumstances it would be unjust and inequitable for Defendant to retain the benefit of the full premiums because Defendant failed to protect the sensitive customer information aggregated and reflected in the Insurance Documents.

63. Defendant's lack of data protection for the Insurance Documents are below minimum industry standards.

64. Defendant was enriched by its actions in Florida.

65. Defendant's enrichment came at Plaintiffs' expense.

66. Florida recognizes a separate common law cause of action for unjust enrichment or restitution.

## COUNT III
### Willful Violation of the Fair Credit Reporting Act

67. Plaintiffs incorporate the above allegations by reference as if set forth fully herein.

68. The Fair Credit Reporting Act requires "consumer reporting agencies" to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance and other information, including appropriate measures to protect the confidentiality of such information. 15 U.S.C. § 1681 *et seq.*

69. Under FCRA, a "consumer report" means any communication of information by a "consumer reporting agency" bearing on a customer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or collected as a factor in establishing eligibility for credit or insurance. 15 U.S.C. § 1681b.

70. Further, a "consumer reporting agency" means any person which regularly engages in whole or in part the practice of assembling or evaluating consumer credit information

or other information on consumers for the purpose of furnishing consumer reports to third parties.

71.     Plaintiffs and Class Members are "consumers" or "persons" under FCRA, 15 U.S.C. § 1681a.

72.     Defendant is a "consumer reporting agency" under FCRA because it regularly engages in providing credit or other information on consumers to Atlas Premium Insurance Company for the purpose of determining whether to finance monthly installment premium payment plans.

73.     Atlas admits on its website in the FAQs that it does not run credit checks on applicants and instead relies solely on the credit and other consumer information furnished to it by Defendant.

74.     Defendant maintains "consumer reports" within the meaning of FCRA.

75.     As a "consumer reporting agency," Defendant is required to "maintain reasonable procedures" to limit the use of consumer reports, including reasonable and effective procedures to limit unauthorized access to Defendant's databases. 15 U.S.C. § 1681e.

76.     Defendant willfully breached its requirement under FCRA to protect its databases by choosing not to encrypt the Insurance Documents and allowing public access to them.

77.     Under FCRA, Plaintiffs and Class Members are entitled to statutory damages of $100 per person for violations of this duty, or actual damages if greater (to a maximum of $1,000 per person), plus costs and attorney's fees. 15 U.S.C. § 1681n.

## COUNT IV
### Negligent Violation of the Fair Credit Reporting Act
#### (Pled in the Alternative to Count III)

78.     Plaintiffs incorporate the above allegations by reference as if set forth fully herein.

79.     The Fair Credit Reporting Act requires "consumer reporting agencies" to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance and other information, including appropriate measures to protect the confidentiality of such information.

80.     Under FCRA, a "consumer report" means any communication of information by a "consumer reporting agency" bearing on a customer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or collected as a factor in establishing eligibility for credit or insurance.

81.     Further, a "consumer reporting agency" means any person which regularly engages in whole or in part the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

82.     Plaintiffs and Class Members are "consumers" or "persons" under FCRA.

83.     Defendant is a "consumer reporting agency" under FCRA because it regularly engages in providing credit or other information on consumers to Atlas Premium Insurance Company for the purpose of determining whether to finance monthly installment premium payment plans.

17

84.     Atlas admits on its website in the FAQs that it does not run credit checks on applicants and instead relies solely on the credit and other consumer information furnished to it by Defendant.

85.     Defendant maintains "consumer reports" within the meaning of FCRA.

86.     As a "consumer reporting agency," Defendant is required to "maintain reasonable procedures" to limit the use of consumer reports, including reasonable and effective procedures to limit unauthorized access to Defendant's databases.

87.     Defendant was negligent in failing to maintain reasonable procedures to protect its databases by choosing not to encrypt the Insurance Documents and allowing public access to them.

88.     Defendant's conduct violated FCRA and Plaintiffs and Class Members have been damaged by Defendant's conduct in an amount to be determined at trial.

89.     Under FCRA, Plaintiffs and Class Members are statutorily entitled to recover actual damages plus costs and attorney's fees.  15 U.S.C. § 1681o.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Order the Defendant to remedy the data breach;

B. Order an independent privacy audit of Defendant and related entities to determine whether similar data breaches are also occurring and to report to the Court the cause of the current data breach;

C. Order the parties to confer on any recommended redactions to this complaint and preparation of a public version to be ECF-filed after the data breach has been remedied;

D. Certify this action as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiffs as class representatives and their counsel as Class Counsel;

E. Award contractual damages to Plaintiffs and the Class for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

F. Award restitution to Plaintiffs and the Class against Defendant;

G. Award statutory damages under the Fair Credit Reporting Act;

H. Permanently restrain Defendant and its officers, agents, employees and attorneys from violating the statutes referred to herein or otherwise violating its privacy policy with respect to data protection;

I. Award Plaintiffs the reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

J. Grant Plaintiffs such further relief as the Court deems appropriate.

## VIII.   JURY DEMAND

Plaintiffs demand a trial by jury of all issues triable.

Dated: March 7, 2016

Respectfully submitted,

**WITES & KAPETAN P.A.**

/s/ Marc A. Wites
Marc A. Wites
Fla. Bar No. 24783
4400 North Federal Highway
Lighthouse Point, FL  33064
*mwites@wklawyers.com*
Tel: 954.526.2729
Fax: 954-354-0205

19

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice* to be sought)
David A. Straite (*pro hac vice* to be sought)
850 Third Avenue
New York, NY 10022
*dstraite@kaplanfox.com*
Tel.: 212.687.1980
Fax: 212.687.7714

　　　　-and-

Laurence D. King (*pro hac vice* to be sought)
Mario M. Choi (*pro hac vice* to be sought)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Tel: 415.772.4700
Fax: 415.772.4707

# Exhibit A

 (J)

Home (http://universalproperty.com/) » Products & Services (services/) » Your Privacy

## Products & Services (/services/?mID=14)

Overview (/services/?mID=20)

Find an Agent (/find-an-agent.aspx?mID=21)

Get a Quote (/services/quote.aspx)

Your Privacy

Lender Verification (/Services/LenderVerification.aspx)

This notice describes the practices and procedures of Universal Insurance Holdings, Inc. and the subsidiaries listed below regarding products or services that you obtain from any of them. If you obtain financial products or services from other members of our corporate family, you will receive a separate notice identifying their practices and procedures.

- Universal Property & Casualty Insurance Company
- American Platinum Property and Casualty Insurance Company
- Universal Risk Advisors, Inc.
- Atlas Premium Finance Company
- Universal Adjusting Corporation
- Universal Inspection Corporation
- Blue Atlantic Reinsurance Corporation
- Universal Florida Insurance Agency, Inc.
- Coastal Homeowners Insurance Specialists, Inc.

# Privacy Statement

The affiliates of Universal Insurance Holdings, Inc., strive to provide you with high quality insurance products and efficient customer service. In the course of doing so, we obtain personal information about you and your family. We consider this information confidential and have procedures in place to protect the information against unlawful use and disclosure. We will disclose your information only as necessary to process your requests for insurance, to provide services to you as a policyholder or claimant, and as otherwise allowed or required by law.

The following statements describe how we obtain and use information about you, and how we protect that information. This statement applies to our affiliates identified below, and applies not only to current customers but also to our former customers. You do not need to take any action in response to this notice.

## Personal Information We Collect

In connection with providing products and services to you, we obtain information from several sources. Most of the information we obtain comes directly from you, such as through the insurance applications you submit and other interactions you have with us. From these interactions with you, we learn information such as your name, address, telephone number, existing coverages, desired coverages, and similar information.

We also learn information about you from your transactions with us. This may include information such as your current or past coverages and related information, your premium levels, your payment history, your claims history, and other information. Your insurance agent also may provide information to us, such as requested additions or deletions of coverage and updated contact information for you. Finally, we may receive information from outside parties that has a bearing on your eligibility for products or services in which you are or might be interested. These parties may include consumer reporting agencies, claims reporting services, motor vehicle records bureaus, or other sources. Information obtained from these sources may include your prior claims history, information about any prior civil or criminal actions in which you have been involved, financial information, and other information about your background.

If you visit an internet site that we maintain, we might request certain information about you that will enable us to identify you as a user, including your name, a user name, a password, and password reminders. We also might obtain information about your web browser, operating system and similar information to improve the performance and operation of our site.

## Our Use of Your Personal Information

We do not share the information we collect with other parties, except our affiliates, nonaffiliated parties performing contractual services for us, and as otherwise required or permitted by law. Universal Insurance Holdings, Inc. is a holding company with various subsidiaries providing various products and services relating to insurance and other financial services. The companies also may offer other products and services as the Universal Insurance Holdings family grows. In order to provide you with access to these products and services, and to improve our service to you, we may share information among members of our corporate family. The information we share among affiliates is limited to information about your transactions and experiences with us and to information that we otherwise are permitted to disclose by law.

When we provide information to parties performing contractual services for us (such as marketing and research), we contractually require those parties to preserve the confidentiality of your personal information. As indicated above, we also might share information that we obtain about you with nonaffiliated parties as allowed or required by law. This means that we might share information with parties as necessary to effect, administer, or enforce transactions that you request. In other words, we might provide your information, for example, to a company that prints and mails our insurance policies, or to a company that adjusts claims you report to us. Finally, we are permitted or required to share information with certain other parties listed in federal law and state rules, such as insurance advisory organizations, our attorneys and accountants, consumer reporting agencies, and civil and regulatory authorities.

### How We Protect Your Personal Information

We maintain physical, electronic, and procedural safeguards to ensure the confidentiality of the personal information we obtain about you. We restrict access to your personal information to those employees who need to know that information to provide services to you.

This summary of our practices is furnished for your information. No action is required by you upon receipt of this notice.

| Customers | Claim Center | Products & Services | Find an Agent (/find- | Agents | Company (/company/? |
|---|---|---|---|---|---|
| (/customer/?mID=8) | (/claims/?mID=13) | (/services/?mID=14) | an-agent.aspx? | Agent Portal | mID=17) |
| Login (/customer/?mID=10) | Claim Information (/claims/? | Overview (/services/? | mID=15) | (http://atlasbridge.com) | About Us (/company/? |
| Activation | mID=16) | mID=20) | | Become an Agent | mID=38) |
| (/customer/activate.aspx) | File a Claim Online | Find an Agent (/find-an- | | | Events (/company- |
| Reset Password | (/claims/fileclaim.aspx) | agent.aspx?mID=21) | | | events.aspx) |
| (/customer/resetpassword.aspx)(ID=19) | | Get a Quote | | | Reinsurance |
| Payment | | (/services/quote.aspx) | | | (/company/reinsurance.aspx) |
| (/customer/payment.aspx) | | Your Privacy (/privacy- | | | Preferred Inspection Vendors |
| Statement of No Loss | | policy.aspx) | | | (/preferred-inspection- |
| (/docs/noLoss.pdf? | | Lender Verification | | | vendors.aspx) |
| v=20140307113403) | | (/Services/LenderVerification.aspx) | | | Careers |
| | | | | | (/company/careers.aspx) |
| | | | | | Apply (/company/apply.aspx) |
| | | | | | Contact Us |
| | | | | | (/company/contact.aspx) |



Privacy Statement (privacy-policy.aspx)   1996-2016 © Universal Property & Casualty Insurance Company
Designed by web design company 352 Media

# Exhibit B

